IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA | Cr. No. 17-00277 JMS |
|---|---|
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS |
| vs. | |
| KOA AKIRA UU, | |
| Defendant. | |

# ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

## I. INTRODUCTION

Defendant Koa Akira Uu ("Uu") seeks an order suppressing evidence relating to the seizure and subsequent search of his backpack by the Maui Police Department ("MPD"). The court finds that the MPD unreasonably delayed obtaining a search warrant for 20 days after seizure of the backpack, and thus violated Uu's Fourth Amendment rights. As a result, the Motion is GRANTED.

## II. BACKGROUND

On April 26, 2017, Uu was indicted by a federal grand jury on a single count of being a felon in possession of a firearm on or about February 14, 2017, in violation of 18 U.S.C. § 922(g). ECF No. 5. On June 30, 2017, Uu filed a Motion

1

to Suppress, claiming that the initial seizure of his backpack (from which the firearm was ultimately seized) on February 14, 2017 was illegal, and that the delay between the time the backpack was seized and the time that MPD obtained a search warrant was unreasonable under the Fourth Amendment.  ECF No. 26.  The court held an evidentiary hearing on September 15, 2017.  The testimony and exhibits admitted during the hearing establish the following:

In the early morning hours of February 14, 2017, MPD Officers Travis Abarra, Lance Yorita, and Devin Schoeppner responded to a motor vehicle accident on Hana Highway.  Shortly before 3:00 a.m., while officers managed traffic at the accident site, Uu approached the officers on a motorcycle.  Although Officer Schoeppner motioned for Uu to continue past the accident scene, Uu pulled the motorcycle to the side of the road, where it stalled.  The officers then observed that the motorcycle had no license plate.  Officer Yorita approached Uu and asked if Uu had a driver's license.  Uu stated that he did, but failed to produce one.  During this time, Uu was unsuccessfully attempting to re-start the motorcycle.

Uu was then told to dismount the motorcycle, which he did.  Upon questioning, Uu provided the police his name and birthdate.  Officer Yorita then

contacted MPD dispatch, and learned that Uu did not have the required driver's license to operate a motorcycle,[1] and that Uu had an outstanding bench warrant.[2]

After Uu was informed that he was being arrested based on the bench warrant, he hesitated and then attempted to flee. But he didn't get far—after only a few steps he was taken to the ground and handcuffed while he was wearing a backpack. Uu was then escorted to the patrol car, where his handcuffs were removed one at a time while Officer Abarra grabbed the top of the backpack and then placed the backpack on the ground. After Uu was re-cuffed, Officer Abarra then took hold of the top of the backpack with his left hand and placed it on the trunk of the patrol vehicle. Uu was then placed inside the patrol vehicle. Although the record is not clear as to the exact timing, around this point in the encounter Uu told the officers that "you can't search my backpack."

Officer Abarra then grabbed the top handle of the backpack with his right hand, and placed his left hand at the bottom of the backpack for support. With his left hand, Officer Abarra immediately recognized what "felt like a large,

---

[1] In Hawaii, a "type 2 endorsement" is required to operate a motorcycle. Uu only had a "type 3" license, such that he could operate an automobile but not a motorcycle.

[2] The State of Hawaii bench warrant was issued in September 2015, even though Uu had been in state custody between September 2015 and February 2017. It is unclear why the bench warrant had not been withdrawn or vacated.

hard handle resembling like a pistol grip."[3]  Officer Abarra testified that, at this point, he did not manipulate the backpack for the purpose of feeling its contents. Then, in an effort to determine if the firearm was holstered, Officer Abarra did manipulate the backpack to feel the firearm.  After determining that the firearm was not in a holster, he called his supervisor and was told to seize the backpack as evidence pending application for a search warrant.

That same early morning, Officer Yorita transported the backpack to MPD's Wailuku station, and then submitted the backpack as evidence pending an application for a search warrant.

And also on that same day (February 14, 2017), MPD Detective Christopher Schmitt was assigned Uu's case.  At that time he was on vacation, returning to MPD on February 16, 2017.  But, for reasons never fully explained, Detective Schmitt did not learn that Uu's backpack had been seized pending a search warrant application until 8 days later, on February 24, 2017.  On that date, he contacted the Maui County Prosecutor's Office to consult with a prosecutor on the search warrant application.  But, again without any reason given, Detective Schmitt waited until March 6, 2017 to present his search warrant affidavit to a

---

[3]  Officer Abarra also explained his familiarity with firearms, based on his 6 years in the military, 10 years at MPD, and as a participant in sports shooting.

judicial officer.  In all, 20 days passed between the time of the seizure of the backpack and the time when a judicial officer approved its search.  The warrant was then executed two days later, on March 8, 2017.[4]  The firearm giving rise to Uu's indictment was recovered from the backpack.

### III.  **DISCUSSION**

In his Motion to Suppress, Uu claims that: 1) Officer Abarra manipulated Uu's backpack such that he was able to discern the presence of the firearm, and this manipulation falls outside of the "plain touch" doctrine; and 2) the delay in obtaining a search warrant and then executing that warrant was unreasonable and in violation of the Fourth Amendment.  Because the court agrees that the delay in obtaining the search warrant violated Uu's Fourth Amendment rights, the Motion to Suppress is GRANTED.[5]

**A.     Legal Framework**

"An unreasonable delay between the seizure of a package and obtaining a search warrant may violate the defendant's Fourth Amendment rights.  The touchstone is reasonableness."  *United States v. Sullivan*, 797 F.3d 623, 633

---

[4]  Detective Schmitt explained that his work on another investigation on March 7, 2017 delayed the execution of the warrant for one day.

[5]  Given this finding, the court need not address whether Officer Abarra unlawfully searched the backpack to determine it contained a firearm, or if the firearm was lawfully discovered pursuant to the "plain touch" doctrine.

(9th Cir. 2015). There is no bright line past which a delay become unreasonable. Instead, the court determines the reasonableness of the delay on a case-by-case basis under the totality of the circumstances, and "not whether the Government has pursued the least intrusive course of action." *Id*. (quoting *United States v. Hernandez*, 313 F.3d 1206, 1213 (9th Cir. 2002)). In evaluating the totality of the circumstances, the court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id*. at 633 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).[6]

And in applying this balancing test, courts have considered a wide array of factors. Obviously, the court considers the government's legitimate interest in holding the property, the period of the delay, and the significance of the interference with the defendant's possessory interest. *See United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012). Courts also review the police diligence in pursuing the investigation, and the corresponding nature and complexity of that investigation. *Id*. at 614. Competing demands from unrelated cases may be a

---

[6] The Fourth Amendment requirement that seized evidence be searched within a reasonable amount of time serves two interests: 1) deterrence of unreasonable police behavior; and 2) judicial determinations of probable cause. *See United States v. Dass*, 849 F.2d 414, 416 (9th Cir. 1988); *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012). Further, a relatively prompt search ensures that the property would be returned without undue delay if no incriminating or illegal evidence were found. *See United States v. Mitchell*, 565 F.3d 1347, 1352 (11th Cir. 2009).

6

reasonable cause for the prolonged retention of a parcel. *Hernandez*, 313 F.3d at 1214. On the other hand, when police "neglect to seek a warrant without any good explanation for that delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable." *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012). Thus, even if a defendant has a diminished possessory interest in the seized item, "the Fourth Amendment still obligate[s] the United States to "diligently obtain[] a warrant.'" *Laist*, 702 F.3d at 616 (quoting *Illinois v. McArthur*, 531 U.S. 326, 334 (2001)).

Another consideration is whether the defendant has sought return of the property, *see Sullivan*, 797 F.3d at 633-34 and *Burgard*, 675 F.3d at 1033, or whether the defendant is incarcerated and thus couldn't make use of the property. *Sullivan*, 797 F.3d at 633. Further, a court may consider whether a defendant consents to the search[7] and a defendant's probation or parole status. *Id*.

**B.     Application**

The court now considers the totality of the circumstances to determine whether the delay between the seizure of the backpack and obtaining the search warrant violated Uu's Fourth Amendment rights.

---

[7] "[W]here a person consents to search and seizure, no possessory interest has been infringed because valid consent, by definition, requires voluntary tender of property." *United States v. Stabile*, 633 F.3d 219, 235 (3d Cir. 2011).

The court recognizes the government's strong interest in searching the backpack for a firearm. Shortly after the February 14 encounter, MPD became aware that Uu was a convicted felon, and his possession of a firearm would be a violation of federal and state law. The State of Hawaii certainly has a real and substantial interest in seizing firearms possessed by convicted felons.

And Uu certainly had a possessory interest in the backpack and its contents.[8] The MPD was fully aware that the backpack belonged to Uu, and that on February 14, 2017 he expressed that very interest by proclaiming to the officers, "you cannot search my backpack." The court also concludes that the interference with the possessory interest was substantial and largely without explanation—the MPD retained the backpack for 20 days prior to obtaining a search warrant,[9] and Uu was not in custody during this period nor did he consent to the search.

Against this backdrop, the government has provided virtually no explanation for its 20-day delay. The court recognizes that Detective Schmitt was

---

[8] *Dass*, 849 F.2d at 415, rejected "the government's assertion that there is a contraband exception to the fourth amendment. . . . Fourth amendment protection is not premised upon the nature of the item ultimately discovered, but rather upon the seizure itself." As the government argues, the court reads *Dass* as stating that a defendant does not lose all possessory interest in contraband, but a defendant may still have a diminished possessory interest in contraband (such as the firearm). In this case, the backpack contained contraband along with a pair of binoculars, which Detective Schmitt described as having no evidentiary value.

[9] The court considers the time period from seizure of the backpack (February 14) until MPD Detective Schmitt obtained the search warrant (March 6). Although the warrant was not executed until March 8, the issue before the court is whether the delay in obtaining a warrant was unreasonable.

8

on vacation until February 16, 2017, and accepts that a short delay based on vacation time is not necessarily unreasonable. But the court received no explanation for further delay. In fact, Detective Schmitt was apparently unaware that a backpack had been seized (or even that he had been assigned the task to apply for a search warrant) until February 24, 2017. On that date, he contacted the Maui County Prosecutor's Office to consult with a prosecutor on the search warrant application. And although these discussions (which certainly should be encouraged) would take a short period of time, the further delay after February 24 was never explained. Instead, without any reason given, Detective Schmitt waited until March 6, 2017 to present the search warrant affidavit to a judicial officer.[10]

And it is equally clear that Detective Schmitt's search warrant affidavit could easily have been prepared in an extremely short time frame. Detective Schmitt testified that he drafted the search warrant affidavit based on the reports of Officers Abarra, Yorita, and Schoeppner. He neither interviewed them nor engaged in any further investigation. In other words, he read three very short reports and drafted his affidavit. And the affidavit contains only approximately two pages of facts, reflecting the February 14, 2017 encounter with Uu on Hana

---

[10] The court rejects the United States' claim in its briefing that after February 24, 2017, Detective Schmitt "diligently worked on drafting a search warrant." ECF No. 33 at 22. Detective Schmitt was not diligent; instead, he was simply inattentive, grossly negligent, or failed to understand his obligation under the Fourth Amendment.

Highway. This was a basic, unadorned search warrant affidavit that should have taken hours, not weeks, to prepare. There was no complexity, no ongoing investigation. Simply put, search warrant applications simply don't get more basic than this one.

Based on the evidence presented, the court concludes that MPD's obvious and unexplained failure to seek a warrant in a timely manner was without explanation or justification. To accept this delay, even when viewed in light of the government's interest, would permit law enforcement officials to obtain search warrants for seized evidence "at their leisure." *Dass*, 849 F.2d at 415.[11]

The court recognizes that under Ninth Circuit caselaw, Uu's possessory interest was diminished by his failure to seek the backpack's return during the 20 day window. *See Sullivan*, 797 F.3d at 633-34 and *Burgard*, 675 F.3d at 1033. But ultimately, even with a minimal possessory interest based on the contents of the backpack and the failure to seek its return, Uu retained *some* possessory interest in the backpack and its contents (including the binoculars). And against this interest, the government waited 20 days to even seek a search

---

[11] In *Dass*, law enforcement delayed obtaining search warrants for 7 to 23 days after the presence of marijuana was detected in various parcels sent through the United States mail. The court determined that this delay was unreasonable. 849 F.2d at 416. The government maintains that *Dass* is distinguishable, largely because of a unique possessory interest in a mailed parcel. ECF No. 53 at 6. But the Ninth Circuit appears to have rejected, at least in part, this reasoning: "[T]he main Fourth Amendment interest in a mailed package attaches to the privacy of its contents, not the speed with which it is delivered." *United States v. Gill*, 280 F.3d 923, 929 (9th Cir. 2002) (quoting *United States v. Hillison*, 733 F.2d 692, 696 (9th Cir. 1984)).

warrant, with almost no explanation for that delay. Even accepting a delay for a two-day vacation, this most basic search warrant application could have very easily been presented to a judicial officer within one day of Detective Schmitt's return from vacation.

The government also argues that Uu's interest was further diluted because he was on probation during this period, and his conditions of probation prohibited him from possessing a firearm and permitted a search based on reasonable suspicion. The court certainly accepts this argument to a certain point. That is, the fact that he was on probation may result in a diminished expectation of privacy. *Sullivan*, 797 F.3d at 633; *see also Sharp v. Cty. of Orange*, 2017 WL 4126947, at *14 (9th Cir. Sept. 19, 2017) (stating that "a probationer or parolee has a diminished expectation of privacy, especially when he accepts probationary conditions that explicitly and unambiguously inform him of a police officer's authority to search his property"). But the government also relies on Uu's specific probation terms, citing to an exhibit attached to its Opposition to the Motion to Suppress. *See* ECF No. 33-1 at page 5. This exhibit was neither offered nor admitted into evidence during the suppression hearing. And the court made clear, prior to the presentation of evidence, that the exhibits attached to the filings would not be considered as evidence unless they were moved into evidence at the hearing.

*See* Hr'g Tr. at pp. 6-7, ECF No. 46. Further, when requesting supplemental briefing, the court was clear that "the briefing may only discuss the evidence presented to the court during the September 15 hearing. The parties are not permitted to present new or additional evidence." ECF No. 45.

Without this unadmitted exhibit, the government has presented no evidence giving rise to a lesser privacy interest based on a specific condition of Uu's probation.[12]

The court must apply a totality of the circumstances test to determine if the delay between the seizure of the backpack and obtaining the search warrant violated Uu's Fourth Amendment rights. And in applying this test, the court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Sullivan*, 702 F.3d at 633 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). "Fourth Amendment interests" includes protection against unreasonable assertions of executive authority and assurance that any seizure will be independently evaluated by a neutral magistrate. *See United States v. Song Ja Cha,* 597 F.3d 995, 1004 (9th Cir. 2010) (the limitations upon warrantless seizures protects "two goals of the fourth amendment—deterring

---

[12] In any event, had the exhibit been introduced, the court's ultimate decision would be the same.

unreasonable police behavior and judicial determination of probable cause"). Here, the government appears to have simply ignored its Fourth Amendment obligation. Rather than working to promptly present a search warrant application to a judicial officer, the MPD acted at its leisure—extreme leisure. As stated in *Dass*, "to accept [the government's] argument would nullify the seizure portion of the search and seizure clause of the fourth amendment. This we will not do." 849 F.2d at 416.

Finally, the court determines that the exclusionary rule applies here. The Ninth Circuit has already determined, in a case involving delay in obtaining a warrant to search a home, that the "good faith" rules of *Herring v. United States* 555 U.S. 135 (2009) and *United States v. Leon*, 468 U.S. 897 (1984) do not apply. *Song Ja Cha*, 597 F.3d at 1004-07; *see also Burgard*, 675 F.3d at 1035-36.

## IV. <u>CONCLUSION</u>

The court recognizes that the government had a strong interest in searching the backpack, and Uu had a diminished possessory interest in the backpack and its contents based on various factors, including his failure to seek its return and his probationary status. But the court cannot simply ignore the amount of time that passed between the backpack's seizure and the presentation of the search warrant application to a judicial officer. This is not a case where the police

acted diligently or had some other explanation for the delay (such as an officer being ill or being busy on other police matters of greater significance). Instead, the delay was unexcused and unexplained. It resulted from a inattentiveness or a lack of understanding of the Fourth Amendment. Or maybe gross negligence. Regardless, the length of the delay with no corresponding explanation or reason for that delay resulted in a violation of the Fourth Amendment.

For the reasons set forth above, the court GRANTS the Motion to Suppress.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 16, 2017.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Uu*, Cr. No. 17-00277 JMS, Order Granting Defendant's Motion to Suppress